## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BARBARA JOAQUIN,                :

                               :

     Plaintiff,            :

                               :     Civil Action No.:    14-1119 (RC)

     v.                 :

                               :     Re Document No.:    24

FRIENDSHIP PUBLIC CHARTER SCHOOL, :

                               :

     Defendant.          :

## <u>MEMORANDUM OPINION</u>

### GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR FEES AND COSTS

## I.  INTRODUCTION

In this action, Plaintiff Barbara Joaquin seeks from Defendant Friendship Public Charter School ("FPCS") an award of the attorneys' fees and costs under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482.  Ms. Joaquin argues that she was the prevailing party and that her requested fees and costs are reasonable.  *See* Pl.'s Mot. Fees & Costs at 4–15, ECF No. 24 ("Pl.'s Mot."); *see also* Pl.'s Reply Opp'n Mot. Fees & Costs at 1, ECF No. 26 ("Pl.'s Reply") (seeking the "total sum" of amounts identified in her itemized exhibits); Pl.'s Reply Ex. 1 at 27 (seeking $119,636.31 in fees and costs).  FPCS disputes Ms. Joaquin's prevailing party status as well as the reasonableness of the fees she seeks.  *See* Def.'s Opp'n Mot. Fees & Costs, ECF No. 25 ("Def.'s Opp'n").  The Court concludes that Ms. Joaquin was the prevailing party, but that only some of Ms. Joaquin's requested fees are reasonable.  Accordingly, the Court will grant in part and deny in part her motion for fees and costs.

## II. BACKGROUND

In January 2014, Ms. Joaquin filed an administrative due process complaint alleging that FPCS had denied her son, G.H., a free appropriate public education ("FAPE") in violation of the IDEA. *Joaquin v. Friendship Pub. Charter Sch.*, No. 14-1119, 2015 WL 5175885, at *2 (D.D.C. Sept. 3, 2015); Compl. ¶ 3, ECF No. 1. Ms. Joaquin alleged that FPCS had failed to implement G.H.'s individualized education program ("IEP") or, in the alternative, that FPCS had failed to provide or develop an appropriate IEP for G.H. *Joaquin*, 2015 WL 5175885, at *2. After an administrative hearing, a hearing officer rejected Ms. Joaquin's claims and denied all her requests for relief. *See* Compl. ¶ 3.

In June 2014, Ms. Joaquin appealed to this Court. *Joaquin*, 2015 WL 5175885, at *3. Her federal complaint asked this Court to (1) declare that FPCS denied G.H. a FAPE in violation of the IDEA; (2) order FPCS to provide G.H. with comprehensive psychological, functional, behavioral, vocational, and other assessments; (3) order FPCS to convene an IEP team meeting to review and revise G.H.'s IEP; and (4) mandate compensatory education. *See* Compl. at 3. After reviewing the administrative record, this Court found that FPCS denied G.H. a FAPE and violated the IDEA by failing to provide G.H. with any of his IEP-mandated transition services. *See Joaquin*, 2015 WL 5175885, at *10. The Court remanded the case to the administrative hearing officer to allow the hearing officer (1) to determine whether Ms. Joaquin's requested compensatory education would be pertinent to G.H.'s wrongfully denied transition services, and (2) if yes, to develop a reasonably calculated award of compensatory education. *See id.*

On remand, the parties reached an agreement on an appropriate award of compensatory education, and the hearing officer issued a consent order that reflected their agreement. *See* Pl.'s Mot. Ex. 12 at 2, ECF No. 24-12. The consent order required FPCS to provide Ms. Joaquin with

funding, to a maximum amount of $1950, for third-party transition services of Ms. Joaquin's

choosing.  *Id.*  After the hearing officer dismissed Ms. Joaquin's administrative case, *id.*,

Ms. Joaquin filed a motion for fees and costs, which is before the Court now. *See* Pl.'s Mot.

### III.  LEGAL STANDARD

Under the IDEA, this Court may award "reasonable attorneys' fees" to a prevailing party

who is the parent of a child with a disability.  20 U.S.C. § 1415(i)(3)(B).  In doing so, the Court

follows a two-step inquiry: first, the court must determine whether the party seeking attorneys'

fees is the prevailing party; second, the court must determine whether the requested fees are

reasonable.  *See McAllister v. District of Columbia*, 21 F. Supp. 3d 94, 99 (D.D.C. 2014);

*Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010).

A "prevailing party" is one "who has been awarded some relief by the court."

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603

(2001); *see also Alegria v. District of Columbia*, 391 F.3d 262, 264 (D.C. Cir. 2004) (applying

*Buckhannon*'s prevailing party analysis in the IDEA context).  Specifically, "plaintiffs may be

considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant

issue in litigation which achieves some of the benefit the parties sought in bringing suit."

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation marks omitted) (quoting

*Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978)); *see also Artis ex rel. S.A. v. District*

*of Columbia*, 543 F. Supp. 2d 15, 22 (D.D.C. 2008) (noting that "[a]lthough a hearing officer

may make a prevailing party determination, it is the province of the district court to make the

ultimate decision as to who prevailed in an IDEA action").  To determine whether the party

moving for fees is a prevailing party, courts in this circuit apply a three-part test: "(1) there must

be a 'court-ordered change in the legal relationship' of the parties; (2) the judgment must be in

favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (quoting *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492–93 (D.C. Cir. 2003)); *accord Arthur v. District of Columbia*, 106 F. Supp. 3d 230, 234 (D.D.C. 2015).

If the Court determines that a plaintiff is a "prevailing party," the court must then determine whether the fees sought are reasonable. 20 U.S.C. § 1415(i)(3)(B). A reasonable fee is calculated by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley,* 461 U.S. at 433; *see also Jackson,* 696 F. Supp. 2d at 101 (applying *Hensley* in the IDEA context). The plaintiff bears the burden of establishing the reasonableness of any fee requests, and, specifically, whether both the hourly rate and the number of hours spent on any particular task are reasonable. *See Eley v. District of Columbia*, 793 F.3d 97, 104 (D.C. Cir. 2015); *Jackson*, 696 F. Supp. 2d at 101 (citing *In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995)). A plaintiff may do so by submitting evidence of "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates of the relevant community." *McAllister*, 21 F. Supp. 3d at 100 (internal quotation marks omitted) (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)). Once the plaintiff has provided that evidence, the Court presumes that the number of hours billed is reasonable, and the burden shifts to the defendant to rebut the plaintiff's showing. *Covington,* 57 F.3d at 1109–10; *Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 172 (D.D.C. 2010). However, if both parties fail to present satisfactory evidence demonstrating that their proposed

hourly rates are reasonable, the court may determine a reasonable hourly rate by reference to the

*Laffey* Matrix. *See Brown v. District of Columbia*, 80 F. Supp. 3d 90, 96 (D.D.C. 2015).[1]

## IV. ANALYSIS

### A. Prevailing Party

FPCS argues that Ms. Joaquin is not a prevailing party because the relief she obtained

was not what she originally sought. *See* Def.'s Opp'n at 5–9. Ms. Joaquin argues that she is a

prevailing party because "[i]n this Court's decision and the [administrative] remand decision

together, Ms. Joaquin obtained the declaration that [FPCS] had denied her son FAPE and

compensatory education." Pl.'s Mot. at 4.

---

[1] The *Laffey* Matrix is a fee schedule used by some courts to determine reasonable hourly rates for legal work. *See generally Laffey v. Nw. Airlines, Inc.* 572 F. Supp. 354, 371–75 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds*, *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988)) (establishing the first *Laffey* fee matrix, in the context of a longstanding employment discrimination class action). The United States Attorney's Office for the District of Columbia prepares the matrix for use in cases in which a "fee-shifting" statute allows prevailing plaintiffs to recover their attorneys' fees. *See Eley*, 793 F.3d at 101; *see also, e.g.*, *Laffey Matrix -- 2014-2015*, Civil Div. of the U.S. Attorney's Office for D.C., https://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf (last visited May 27, 2016). Updated *Laffey* Matrix rates are available through the U.S. Attorney's Office's website. *See Civil Division*, U.S. Attorney's Office for D.C., https://www.justice.gov/usao-dc/civil-division (last updated Dec. 1, 2015) (publishing links to *Laffey* matrices at the bottom of the webpage).

Until the 2015–2016 year, the *Laffey* Matrix was adjusted for inflation by reference to the overall cost of living in the Washington, D.C., metropolitan area. *See Eley*, 793 F.3d at 101; *Laffey Matrix -- 2014-2015*, *supra*, at 1 n.2. The 2015–2016 *Laffey* Matrix, however, uses a revised methodology, which adjusts for inflation by reference to changes in lawyers' hourly rates in the Washington, D.C. metropolitan area. *See USAO Attorney's Fees Matrix – 2015 – 2016*, Civil Div. of the U.S. Attorney's Office for D.C., https://www.justice.gov/usao-dc/file/796471/download (last visited May 27, 2016).

A competing matrix, sometimes called the "LSI *Laffey* Matrix," "adjusts for the increases in costs for legal services only," but by reference to "the *national* rate of change in the cost of legal services." *Eley*, 793 F.3d at 101–02.

To be considered a "prevailing party," Ms. Joaquin must have: (1) experienced a court-ordered change in her legal relationship with FPCS, (2) obtained a favorable judgment, and (3) received a judicial pronouncement accompanied by some judicial relief.  *See Straus*, 590 F.3d at 901 (articulating the three-part test for determining prevailing party status).  A party need not succeed on every claim to be a prevailing party, because a court has discretion to consider the extent to which a party prevails on various issues when calculating fee awards.  *See Hensley*, 461 U.S. at 433–37 (explaining that if a party enjoys limited success on the merits, a court may reduce an award accordingly).  "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."  *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989).

Here, Ms. Joaquin has experienced a material alteration of her legal relationship with FPCS through a court-ordered change, and so she satisfies the first prong of the three-part test for determining prevailing-party status.  *See Straus*, 590 F.3d at 901.  A consent order, like a consent decree, works as a court-ordered change.  *See, e.g.*, *Buckhannon*, 532 U.S. at 604 ("[S]ettlement agreements enforced through a consent decree may serve as the basis for an award of attorneys' fees. . . . [They are] a court-ordered 'chang[e] [in] the legal relationship between [the plaintiff] and the defendant.'" (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 792)); *Arthur v. District of Columbia*, 106 F. Supp. 3d 230, 234–35 (D.D.C. 2015) (finding that an administrative consent order sufficed to establish the plaintiff's prevailing-party status).  Because Ms. Joaquin brought suit against FPCS, and because of the resulting consent order on remand, FPCS must fund transition services for G.H.  *See* Pl.'s Mot. Ex. 12 at 2.  The consent order required FPCS to "modify[] [its] behavior in a way that directly benefits the plaintiff," and it thereby materially

altered the legal relationship between Ms. Joaquin and FPCS. *See Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992).

FPCS's arguments to the contrary do not change the Court's view.  FPCS argues that no material alteration occurred because Ms. Joaquin did not receive most of the substantive relief which she originally sought.  *See* Def.'s Opp'n at 5–9.  But "the *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the *size* of a reasonable fee, not to eligibility for a fee award at all."  *Tex. State Teachers Ass'n*, 489 U.S. at 790 (emphasis added); *accord Arthur*, 106 F. Supp. 3d at 235–36.  Thus, "[w]hile partial versus complete success is a consideration in assessing the *amount* of fees, the critical question in evaluating the *availability* of fees 'is whether fee claimants have received any benefit at all.'" *Grano v. Barry*, 783 F.2d 1104, 1109 (D.C. Cir. 1986) (emphases added) (quoting *Miller v. Staats*, 70 F.2d 336, 341 n.30 (D.C. Cir. 1983)).  Even if Ms. Joaquin achieved only partial success, she still experienced a material alteration in her legal relationship with FPCS.

Nor does FPCS change the Court's determination on the first prong of the prevailing party test by citing to *E.S. ex rel. R.S. v. Skidmore Tynan Independent School District*, No. 06-0360, 2007 WL 81794 (S.D. Tex. Jan. 8, 2007).[2]  In that case, the plaintiffs were denied prevailing party status because their complaint did not explicitly seek the relief they ultimately received.  *E.S. ex rel. R.S.*, 2007 WL 81794, at *4–6.  FPCS appears to analogize to *E.S.* by arguing that (1) at her administrative hearing, Ms. Joaquin did not personally allege that G.H. did

---

[2] FPCS incorrectly cites this case as *E.S. v. Indep. Sch. Dist., No. 196 Rosemount-Apple Valley*, 135 F.3d 566 (8th Cir. 1998), a case with facts that do not match the facts FPCS recounts. *Compare* Def.'s Opp'n at 9 (describing *E.S.* as a case in which "the District Court determined that a parent demanding a designated aide for her child's toileting needs was not a prevailing party"), *with E.S. v. Indep. Sch. Dist.*, 135 F.3d at 567–69 (finding that E.S., a student who suffered from dyslexia, "was receiving a free appropriate public education," but omitting any discussion of who was the prevailing party).

not receive transition services, so (2) Ms. Joaquin did not originally seek relief in the form of

transition services.  *See* Def.'s Opp'n at 8–9 (arguing that Ms. Joaquin's "evidence presented at

the Due Process hearing clearly established that the violation for which she was requesting

compensatory education was not in any way connected to transition services").  But

Ms. Joaquin's administrative complaint did allege FPCS's "[f]ailure to appropriately implement

[G.H.'s] IEP," *see* Due Process Compl. Notice at 1, Administrative R. at 3, ECF No. 12-1

(alleging FPCS's failure to implement G.H.'s IEP), and FPCS does not dispute the fact that

G.H.'s IEP included a provision requiring transition services, *see* Def.'s Opp'n at 8–9 (conceding

that Ms. Joaquin's administrative due process complaint "broadly pled" FPCS's failure to

provide transition services); IEP at 17–18, Administrative R. at 445–46, ECF No. 12-3

(including transition services in G.H.'s IEP).  Transition services for G.H. were, therefore, part

of the relief Ms. Joaquin originally sought.  Thus, aside from being merely persuasive authority

from another jurisdiction, *E.S.* does not apply to Ms. Joaquin's fees motion because it addresses

different facts.

The other two prongs of the prevailing party test are easily satisfied and FPCS does not

argue otherwise.  With respect to the second prong, Ms. Joaquin received a judgment in her favor

because the Court, contrary to the hearing officer's decision in the administrative proceeding,

found that FPCS denied G.H a FAPE and remanded the case to allow the hearing officer to

determine an appropriate remedy.  *See Joaquin*, 2015 WL 5175885, at *10; *see also McCrary v.

District of Columbia*, 791 F. Supp. 2d 191, 197–98 (finding the second prong of the prevailing

party test satisfied because the Hearing Officer determined that the District of Columbia denied

the student a FAPE).  With respect to the third prong, the hearing officer's consent order granted

Ms. Joaquin judicial relief.  *See generally Buckhannon*, 532 U.S at 606 (contrasting judicial

relief, obtained by adjudicative order, with extrajudicial alteration of circumstances).[3]  Because

Ms. Joaquin satisfies all three prongs of the prevailing-party test, the Court finds that

Ms. Joaquin was a prevailing party in this case and presumes that she should receive an award of

attorneys' fees and costs.  *See* 20 U.S.C. § 1415(i)(3)(B).

### B.  Reasonableness of Fees Requested

#### 1. Hours Worked

##### *a.  Reduction of Ms. Joaquin's Award to Account for Limited Success*

FPCS argues that even if the Court finds that Ms. Joaquin prevailed, the Court should

nonetheless deny or reduce her fee award to account for Ms. Joaquin's *de minimis* or limited

success.  *See* Def.'s Opp'n at 10–13.  The Court may reduce an attorneys' fee award to account

for limited success on the merits.  *Hensley*, 461 U.S. at 434–36.  Because Ms. Joaquin received

less than all of the relief she sought, reducing her fee award is justifiable.  *See, e.g.*, *Dickens v.

Friendship–Edison P.C.S.*, 724 F. Supp. 2d 113, 121–22 (D.D.C. 2010) (imposing a reduction on

a fee award with respect to one child's claims, because the plaintiffs received some but not all of

---

[3] Consent orders, unlike private settlements, satisfy the third prong of the prevailing party test because "court-approved settlements and consent decrees . . . [are] at least the product of, and bear[] the sanction of, judicial action in the lawsuit."  *Buckhannon*, 532 U.S. at 618 (Scalia, J. concurring) (emphasis omitted); *see also, e.g.*, *Arthur*, 106 F. Supp. 3d at 235–36 (holding that an administrative consent order can effect a change in the parties' legal relationship and thereby render plaintiffs prevailing parties entitled to recover reasonable attorneys' fees under the IDEA).

Additionally, "an impartial hearing officer's decision on the merits, while not 'judicial,' still gives rise to prevailing party status because it changes 'the legal relationship between the parties' and is 'enforceable' either by the hearing officer or a court under 42 U.S.C. § 1983." *Arthur*, 106 F. Supp. 3d at 234 (quoting *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 75–76 (2d Cir. 2005)); *accord El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 422–23 n.4 (5th Cir. 2009); *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 854 (3d Cir. 2006).

the relief they requested with respect to that child).[4]  However, an outright denial of attorneys'

fees is not warranted on these grounds.  When, as here, monetary damages accompany

declaratory relief, the prevailing party is typically entitled to *some* amount of attorneys' fees.

*See Thomas*, 330 F.3d at 494 (naming "the payment of damages" as judicial relief that warrants a

fee award under the Equal Access to Justice Act (quoting *Hewitt v. Helms*, 482 U.S. 755, 761

(1987))). *Compare* Pl.'s Mot. Ex. 12 at 2 (awarding Ms. Joaquin $1950 in funding to remedy

FPCS's failure to provide G.H. with transition services), *with Farrar*, 506 U.S. at 115 (noting, as

an example of a plaintiff who prevails but should receive no attorneys' fees, "[a] plaintiff who

seeks compensatory damages but receives no more than nominal damages").

FPCS's discussion of *T.G. ex rel. T.G. v. Midland School District 7*, 848 F. Supp. 2d 902

(C.D. Ill. 2012), *aff'd sub nom. Giosta v. Midland Sch. Dist. 7*, 542 F. App'x 523 (7th Cir. 2013),

does not change this conclusion.  *See* Def.'s Opp'n at 10–11 (discussing *T.G.*, a case in which the

---

[4] Ms. Joaquin contends that the Court should not reduce her fee award because Ms. Joaquin obtained "total success."  Pl.'s Reply Opp'n Mot. Fees & Costs at 3–5 ("Pl.'s Reply").  But Ms. Joaquin's position is incorrect for two reasons.

First, Ms. Joaquin improperly relies on FPCS's voluntary conduct as a sign of her success.  *See id.* at 3–4.  The Supreme Court has expressly rejected "[a] defendant's voluntary change in conduct" as grounds for an award of attorneys' fees.  *See Buckhannon*, 532 U.S. at 605.  In doing so, the Supreme Court explained that the defendant's voluntary change in conduct "lacks the necessary judicial *imprimatur*" necessary to alter the parties' legal relationship.  *Id.*

Second, Ms. Joaquin bases her claim of "total success" on unpersuasive assertions that (1) only her compensatory education request was outstanding by the time the parties filed summary judgment motions and (2) she subsequently received an award of compensatory education.  *See* Pl.'s Reply at 4.  Her assertions misconstrue the litigating position she took in her summary judgment motion, in which she sought compensatory education for *multiple* alleged deviations from G.H.'s IEP, and not just compensatory education for FPCS's failure to provide G.H. with transition services.  *See* Pl.'s Mot. Summ. J. at 8–14, ECF No. 10 (seeking, among other things, "funding for three courses" that would include "the cost of the online courses . . . plus the cost of 20 hours tutoring for each class").  Having obtained only compensatory education relating to FPCS's failure to provide G.H. with transition services, Ms. Joaquin cannot claim that she obtained "total success" on her IDEA claims against FPCS.  *See Joaquin*, 2015 WL 5175885, at *10.

plaintiffs obtained limited compensatory education because the school district partially denied the child a FAPE, but in which the plaintiffs nonetheless achieved only a *de minimis* victory that did not entitle them to an award of attorneys' fees).  To be sure, "[i]n some circumstances, even a plaintiff who formally 'prevails' . . . should receive no attorney's fees at all."  *Farrar*, 506 U.S. at 115.  But in this district, "[w]hen a hearing officer [or the Court] finds that a student was denied access to a free appropriate public education, the student may usually recover reasonable attorney's fees as the prevailing party because a denial of a free appropriate public education is a direct violation of the statute."  *Artis ex. rel. S.A. v. District of Columbia*, 543 F. Supp. 2d 15, 22 (D.D.C. 2008); *cf. Genrette v. Options Pub. Charter Sch.*, 926 F. Supp. 2d 364, 366–67 (D.D.C. 2013) (finding that the plaintiff's *de minimis* relief did not support an award of attorneys' fees when "the Hearing Officer did *not* conclude that [the plaintiff] was denied a FAPE"); *Bush ex rel. A.H. v. District of Columbia*, 579 F. Supp. 2d 22, 33 (D.D.C. 2008) (finding that one plaintiff should not receive an award of attorneys' fees because, having obtained an order granting only her request for the scheduling of an IEP meeting but not an order declaring that her daughter was denied a FAPE, her success was *de minimis*).

To the extent that *T.G.* holds otherwise, that decision is from the District Court for the Central District of Illinois and therefore is not binding on this Court. Additionally, its underlying procedural posture differs from Ms. Joaquin's here.  In *T.G.*, an IDEA case in which the plaintiffs appealed a hearing officer's determinations about a student's seventh through ninth grade years, the district court denied the plaintiffs' motion for summary judgment in full with a comprehensive opinion.  *See T.G.*, 848 F. Supp. 2d at 909–34.  In doing so, the court noted the plaintiffs' ambitious goals:

> Plaintiffs sought a finding that Defendant denied the parents' procedural rights, a finding that T.G.'s IEPs for each of three school years were both inadequate and

> improperly implemented, a finding that Defendant failed to provide both specially
> designed instruction and appropriate related services, reimbursement for four
> private evaluations, and an order of substantially more compensatory education.
> What they received was an order that, for one school year, Defendant failed to
> provide a FAPE in three areas, and a specifically-tailored order of compensatory
> education limited to addressing that deficiency.

*Id.* at 933.  The court specifically noted that the plaintiffs pursued these goals "in their due process complaint *and* their appeal" before the district court.  *Id.* (emphasis added).

Here, although Ms. Joaquin also received less relief than she initially sought, she narrowed the issues in contention as her case progressed.  By the time this Court considered her motion for summary judgment on the hearing officer's determination below, Ms. Joaquin alleged only four discrete ways in which she believed FPCS had denied G.H. a FAPE.  *See* Pl.'s Mot. Summ. J. at 8–13.  Ms. Joaquin achieved success on one of those allegations: the allegation that "FPCS's failure to provide transition services was a material departure from G.H.'s IEP amounting to the denial of a free appropriate public education."  *Joaquin*, 2015 WL 5175885, at *8.  Because Ms. Joaquin narrowed the scope of her appeal and hence reduced the number of attorney hours spent litigating her appeal, her fee request, unlike the plaintiffs' fee request in *T.G.*, is more likely to be "reasonable in relation to the success achieved."  *Hensley*, 461 U.S. at 436.  Given the different procedural postures presented in *T.G.* and in Ms. Joaquin's case here, the Court declines to follow *T.G.* and will not deny Ms. Joaquin a reasonable fee award.  *See generally id.* ("There is no precise rule or formula for making [fee] determinations. . . . The court necessarily has discretion in making this equitable judgment.").

The Court will nonetheless reduce Ms. Joaquin's fee award to account for Ms. Joaquin's limited success.  *See id.* (explaining that, when plaintiffs prevail on only some of their claims, "a fee award based on the [total] claimed hours" would be "excessive").  The Court may reduce fees in a number of ways, such as by eliminating specific hours or reducing the award as a

whole.  *Id.* at 436–37.  When determining how to reduce fee awards for partially successful

plaintiffs, the court must analyze the relationships between the successful and unsuccessful

claims.  *See id.* at 434–35 (explaining that the more closely related the claims, the more difficult

it will be to divide the hours on a claim-by-claim basis).

If the plaintiff presented "distinctly different claims for relief that are based on different

facts and legal theories," then "counsel's work on one claim will be unrelated to his work on

another claim."  *Id.*  In cases with such "distinctly different claims," "no fee may be awarded for

services on [any] unsuccessful claim[s]."  *Id.*

But if the plaintiff's claims "involve a common core of facts," or are based on "related

legal theories," "[m]uch of counsel's time will be devoted generally to the litigation as a whole,

making it difficult to divide the hours expended on a claim-by-claim basis."  *Id*. at 435.  In cases

with interrelated claims, the court should "focus on the significance of the overall relief obtained

by the plaintiff in relation to the hours that counsel reasonably expended on the litigation."  *Id*.

After review of the record, the Court finds that Ms. Joaquin's claims derive from a

"common core of facts," *id.*, and hence the Court cannot easily divide, claim-by-claim, her

counsel's hours expended.  Overall, Ms. Joaquin's case involves her assertion that FPCS failed

to implement G.H.'s IEP.  *See Joaquin*, 2015 WL 5175885, at *3, *5 n.5; Compl. ¶ 11.  That IEP

included plans not just for the transition services that FPCS failed to provide, but also for other

educational services for which Ms. Joaquin sought an award of compensatory education.  *See*

*Joaquin*, 2015 WL 5175885, at *1, *5; Pl.'s Mot. Summ. J. at 8–14.  Hence, Ms. Joaquin's

successful claim (about FPCS's failure to provide transition services) and her unsuccessful

claims (about FPCS's failure to provide other education services) share a common core of facts,

all relating to the central issue of whether FPCS implemented G.H.'s IEP.  Indeed, the Court's

summary judgment opinion expressly noted how facts about the appropriateness of G.H.'s school placement were related to FPCS's failure to provide transition services. *See Joaquin*, 2015 WL 5175885, at *9 (discussing how "the preponderance of the evidence shows that G.H. was deprived of transition services while he was at Options," the school where Ms. Joaquin alleged G.H. was inappropriately placed). Accordingly, because Ms. Joaquin's claims were based on interrelated facts, the Court will not reduce her counsel's hours expended on a claim-by-claim basis, but will instead reduce her overall fee award. *See Hensley*, 461 U.S. at 434–37.[5]

The Court believes it appropriate to reduce Ms. Joaquin's total award by fifty percent. On appeal to this Court, Ms. Joaquin alleged FPCS denied G.H. a FAPE in four ways: (1) by failing to provide G.H. with the hours of specialized instruction required by G.H.'s IEP, (2) by failing to provide G.H. with transition services, (3) by failing to follow G.H.'s behavior intervention plan, and (4) by failing to provide G.H. with an appropriate school placement. *See* Pl.'s Mot. Summ. J. 8–13; *see also Joaquin*, 2015 WL 5175885, at *5–10 (discussing each of Ms. Joaquin's four allegations in turn). Ms. Joaquin prevailed on only one of those four allegations. *See Joaquin*, 2015 WL 5175885, at *5–10. In light of Ms. Joaquin's limited degree of success, a fee award based on all of Ms. Joaquin's attorneys' claimed hours would be "excessive." *Hensley*, 461 U.S. at 436. But the Court recognizes that a reduction of seventy-five percent would be inappropriate, because Ms. Joaquin's claims were interrelated and her attorneys therefore devoted some of their claimed hours to developing her claims as a whole. *See id.* at

---

[5] Ms. Joaquin's attorneys' invoice also supports the Court's decision to reduce Ms. Joaquin's overall award, instead of awarding her only those fees related to her successful claim about transition services. Ms. Joaquin's attorneys have itemized their invoices without reference to Ms. Joaquin's specific assertions about how FPCS failed to implement G.H.'s IEP. *See* Pl.'s Mot. Ex. 1. Their invoices thus show that they spent their time in furtherance of Ms. Joaquin's case as a whole, without dividing their time between Ms. Joaquin's discrete claims about G.H.'s IEP.

435 n.11 (disapproving of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon" (internal quotation marks omitted) (quoting the district court's opinion)).  Accordingly, the Court finds that a fifty percent reduction equitably reflects "the significance of the overall relief obtained by [Ms. Joaquin] in relation to the hours reasonably expended on the litigation."  *Id.* at 435.[6]

### b.  Specific Time Entries

FPCS urges the Court to strike certain time entries from Ms. Joaquin's attorneys' invoice: (1) entries that predate when Ms. Joaquin filed her administrative due process complaint, Def.'s Opp'n at 13; (2) entries that involve communications between Ms. Joaquin's attorneys, *id.* at 15; (3) entries that relate to IEP meetings, *id.* at 14; and (4) entries that are irrelevant to this case, *id.* at 13–14, 17.[7]  In response, Ms. Joaquin has voluntarily removed certain entries from her attorneys' invoice.  *See* Pl.'s Reply at 5.  The Court addresses each of FPCS's four categories of contested entries in turn.

First, the Court finds that, contrary to FPCS's contentions, Ms. Joaquin's attorneys' entries predating the administrative due process complaint are eligible for an attorneys' fee award.  "A court may reduce an award of attorneys' fees if the plaintiffs incurred charges that predate the administrative hearing by such an extended period of time that they lack 'a

---

[6] The Court's decision also takes into account the Supreme Court's statement that "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill."  *Hensley*, 461 U.S. at 436.  "[T]he product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount . . . even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."  *Id.*  In light of all these considerations, the Court finds that a fifty-percent reduction is appropriate.

[7] FPCS also asserts that the Court should not award fees for work performed "on the issue of [the] appropriateness of [G.H.'s] placement."  Def.'s Opp'n at 13, 16.  But because the Court will not reduce Ms. Joaquin's fee award on a claim-by-claim basis, *see supra* Part IV.B.1.a, the Court does not consider the precise issues to which Ms. Joaquin's attorneys' hours correspond.

meaningful relationship with that hearing.'" *Santamaria v. District of Columbia*, 875 F. Supp. 2d 12, 18 (D.D.C. 2012) (quoting *Czarniewy v. District of Columbia*, 2005 WL 692081, at *4 (D.D.C. Mar. 25, 2005)).  But "courts in this district have found that 'a year in advance of a hearing "is an entirely reasonable window of time to be engaging in productive work that will result in a favorable administrative decision" based on a showing by the plaintiff that each charge was tied to a particular hearing.'" *Rapu v. D.C. Pub. Sch.*, 793 F. Supp. 2d 419, 427 (D.D.C. 2011) (quoting *Gray v. District of Columbia*, 779 F. Supp. 2d 68, 76 (D.D.C. 2011)). Here, work completed up to four months before Ms. Joaquin filed her administrative due process complaint falls within that "entirely reasonable window of time," and her attorneys' itemized invoice show how each charge within that time period was tied to Ms. Joaquin's administrative due process complaint (filed on January 17, 2014) and her administrative hearing (held on March 7, 2014 and March 10, 2014).  *See* Pl.'s Reply Ex. 1 at 1–4 (listing Ms. Joaquin's attorneys' annotated time entries between September 24, 2013 and January 17, 2014).  *See generally* Due Process Compl. Notice at 1, Administrative R. at 3, ECF No. 12-1; Hr'g Officer Determination at 1, Administrative R. at 730, ECF No. 12-5 (noting the dates of Ms. Joaquin's administrative hearing).  The Court therefore declines to strike the billing entries predating the date when Ms. Joaquin filed her administrative due process complaint.

Second, the Court also will not strike time entries reflecting communications between Ms. Joaquin's two attorneys.  Time spent in consultations with co-counsel in an IDEA case is compensable.  *See, e.g.*, *Taylor v. District of Columbia*, 134 F. Supp. 3d 58, 63 (D.D.C. 2015). To be sure, such communications can sometimes be excessive and warrant a reduction in any later fee award.  *See, e.g.*, *Alfonso v. District of Columbia*, 464 F. Supp. 2d 1, 4–5 (D.D.C. 2006). But here, the communications between Ms. Joaquin's attorneys were, in general, brief.  *See, e.g.*,

Pl.'s Reply Ex. 1 at 14–15 (listing time entries for discussions and emails between Ms. Joaquin's attorneys that, in general, did not exceed 0.3 hours).  When communications between her attorneys were more lengthy, they typically involved discussion of weightier topics, such as "potential issues to appeal" from Ms. Joaquin's administrative case, arguments to be made in court filings, and the ramifications of a potential settlement.  *See, e.g.*, *id.* at 15, 16, 24–26. FPCS has not attacked specific time entries or alleged that the attorneys' communications, apart from being large in number, were substantively unreasonable.  *See* Def.'s Opp'n at 15.  Without more reason to find entries for communications between Ms. Joaquin's attorneys unreasonable, the Court declines to strike any entries relating to those communications.

Third, the Court agrees with FPCS's contention that Ms. Joaquin cannot receive a fee award for any time entries relating to meetings of G.H.'s IEP team.  Under the IDEA, work "relating to any meeting of the IEP Team" is not compensable unless "such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the state, for a mediation [held in accordance with IDEA procedures]."  20 U.S.C. § 1415(i)(3)(D)(ii). Accordingly, Ms. Joaquin has voluntarily removed a time entry relating to an IEP meeting held on February 27, 2014.  *See* Pl.'s Reply at 5 ("Friendship correctly notes that the 02/27/14 entries regarding the IEP meeting should not be included; Ms. Joaquin has removed them."); *id.* Ex. 1 at 11, 12 (noting "N[o] C[harge]" for the "2/27/2014" time entries relating to G.H.'s meeting "at his current school").

The parties disagree about whether Ms. Joaquin may receive an award of attorney's fees for time entries relating to meetings held on October 22, 2013 and October 25, 2013.  *See* Def.'s Opp'n at 14 (contending that those meetings were IEP meetings); Pl.'s Reply at 5–6 (contending that those meetings were "placement meeting[s]").  Upon examination of the record and the

IDEA itself, the Court concludes that FPCS is correct and that time entries relating to the two

October 2013 meetings are not compensable.  Although the record does not clearly state whether

those meetings were IEP meetings, notes from the October 25, 2013 meeting state that "[t]he *IEP*

*team* determined that a non-public placement[] was warranted."  *See* Change of Placement

Meeting for [G.H.], Administrative R. at 578–79, ECF No. 12-4 (emphasis added).  Nor does

Ms. Joaquin allege that the members of the October meetings were not members of G.H.'s IEP

team.  *See* Pl.'s Reply at 5–6.[8]  And because the IDEA precludes a fee award for work relating to

"any meeting of the IEP team," without regard to the subject-matter of that meeting, whether the

work performed for the October 2013 meetings was "related to this case" is irrelevant.  *See* Pl.'s

Reply 5–6 (discussing the content of the October 2013 meetings, not their membership); Ostrem

V.S. ¶ 4, Pl.'s Reply Ex. 2, ECF No. 26-1 (same).  Given that Ms. Joaquin has the burden to

demonstrate that her claimed fees are reasonable, *see Hensley*, 461 U.S. at 437, the Court finds

that Ms. Joaquin has failed to show that the October 2013 meetings were not meetings of G.H.'s

IEP team.[9]  The Court will therefore strike Ms. Joaquin's attorneys' 0.7-hour time entry for the

October 22, 2013 meeting, their 1-hour time entry for the October 25, 2013 meeting, and their

---

[8] Indeed, the October 25, 2013 meeting participants fit the statutory requirements of an "IEP Team."  *See* 20 U.S.C. § 1414(d)(1)(B), (C); Change of Placement Meeting for [G.H.], Administrative R. at 578–79, ECF No. 12-4.

[9] Because Ms. Joaquin has not argued or submitted evidence to show that the October 2013 meetings were "convened as a result of an administrative proceeding or judicial action, or . . . for a mediation" (and thereby eligible for a fee award), *see* 20 U.S.C. § 1415(i)(3)(D)(ii), the Court deems any such arguments waived.  *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[U]ndeveloped arguments . . . are deemed waived.").  In any event, because Ms. Joaquin filed her administrative complaint on January 17, 2014, *see* Due Process Compl. Notice at 1, Administrative R. at 3, ECF No. 12-1, meetings held in 2013 could not have been convened "as a result of an administrative proceeding or judicial action," 20 U.S.C. § 1415(i)(3)(D)(ii).

1.5-hour time entry for travel to and from the October 25, 2013 meeting.  *See* Pl.'s Reply Ex. 1 at
2–3 (listing the relevant time entries).

    Fourth, the Court finds that Ms. Joaquin has adequately resolved the concerns that FPCS
raised over work that allegedly "had nothing to do with the issues in this case."  Def.'s Opp'n at
14; *see also id.* at 17.  Of the time entries FPCS found objectionable for this reason, Ms. Joaquin
has voluntarily removed several of them.  *See* Pl.'s Reply at 5 (noting that Ms. Joaquin removed
time entries for work done "on 12/09/13, 12/10/13, and 01/07/14 regarding 'truancy court' and a
'PINS proceeding'"); *id.* Ex. 1 at 3–4 (noting "N[o] C[harge]" for the relevant time entries).
And, in response to FPCS's contention that a March 6, 2014 time entry was for an unrelated
case, *see* Def.'s Opp'n at 14 & n.*, Ms. Joaquin has clarified that her attorney "inadvertently"
referred to FPCS as "DCPS" "because the District of Columbia Public Schools is the defendant
in the large majority of [his] IDEA cases," Pl.'s Reply at 6; Ostrem V.S. ¶ 7, Pl.'s Reply Ex. 2,
ECF No. 26-1.  The Court has no reason to doubt this narrative and thus declines to address the
March 6, 2014 issue further.  Lastly, where Ms. Joaquin's attorneys' invoice lists time entries for
work performed after the hearing officer issued the October 30, 2015 consent order dismissing
Ms. Joaquin's case, the Court finds the time entries to be reasonable and related to this case.  *See*
Pl.'s Reply Ex. 1 at 21–24, 26.  To the extent FPCS objects that those time entries are for
preparation of the attorneys' invoice, *see* Def.'s Opp'n at 17, FPCS's objection lacks merit
because "our general rule is that the court may award additional fees for 'time reasonably
devoted to obtaining attorney's fees.'"  *Kaseman v. District of Columbia*, 444 F.3d 637, 640
(D.C. Cir. 2006) (quoting *Envtl. Def. Fund v. EPA*, 672 F.2d 42, 62 (D.C. Cir. 1982)).

    Taking into account the Court's fifty percent reduction for limited success, *see supra*
Part IV.B.1.a, the Court determines that Ms. Joaquin is entitled an award of one-half of fees

corresponding to the entries that remain on her attorneys' invoice and that do not relate to

meetings of G.H.'s IEP team.[10]

## 2.  Hourly Rates

The Court now considers the appropriate hourly rate to use when calculating

Ms. Joaquin's fee award.  Ms. Joaquin urges the Court to use rates found in a version of the

*Laffey* Matrix, described by the D.C. Circuit as the "LSI *Laffey* Matrix," which "uses the Legal

Services Index of the Bureau of Labor Statistics to adjust for inflation."  *Eley*, 973 F.3d at 101;

*see* Pl.'s Mot. at 5–6; *id.* Ex. 2, ECF No. 24-2 (reproducing Ms. Joaquin's proposed matrix,

printed from "laffeymatrix.com"); *id.* Ex. 3, ¶¶ 7–10, ECF No. 24-3 (explaining how

Mr. Kavanaugh, an economist, used the Legal Services Index to adjust the original *Laffey*

matrix).[11]  FPCS argues that rates in the LSI *Laffey* Matrix are not reasonable and that the Court

---

[10] Accordingly, the Court calculates compensable hours for Mr. Ostrem, Ms. Joaquin's administrative counsel, as follows: 92.8 hours for legal work and 3 hours for travel between June 1, 2013 and May 31, 2014, *see* Pl.'s Reply Ex. 1 at 1–15; 9.7 hours for legal work between June 1, 2014 and May 31, 2015, *see id.* at 15–16; and 26.8 hours for legal work between June 1 2015 and May 31, 2016, *see id.* at 16–24.  The Court calculates work and travel hours separately because, in this circuit, travel time is compensated at half of the attorney's appropriate hourly rate.  *See McAllister*, 21 F. Supp. 3d at 106.

The Court calculates compensable hours for Mr. Tyrka, Ms. Joaquin's counsel in this Court, as follows: 1.5 hours for legal work between June 1, 2013 and May 31, 2014, *see id.* at 25; 29.75 hours for legal work between June 1, 2014 and May 31, 2015, *see id.* at 25–26; and 32.75 hours for legal work between June 1 2015 and May 31, 2016, *see id.* at 26.

[11] Ms. Joaquin's attorneys' invoice indicates that Ms. Joaquin seeks an hourly rate of $586 for Ms. Joaquin's administrative counsel and an hourly rate of $661 for Ms. Joaquin's counsel in this Court.  *See* Pl.'s Reply Ex. 1, ECF No. 26-1.  These rates correspond to 2015–2016 hourly rates that the LSI *Laffey* Matrix lists for attorneys who are eight to ten years and eleven to nineteen years out of law school, respectively.  *See* Pl.'s Mot. Ex. 2 at 1, ECF No. 24-2.

The Court notes that, even if the LSI *Laffey* Matrix did prescribe reasonable hourly rates for Ms. Joaquin's attorneys, Ms. Joaquin's attorneys would not be eligible for 2015–2016 hourly rates for *all* of their work performed on Ms. Joaquin's case.  Her attorneys performed much of the work on her case before June 1, 2015, which is the date on which 2015–2016 rates took effect.  *See* Pl.'s Mot. Ex. 2 at 1 (showing "6/01/14-5/31/16" as the date range to which

should follow *Wilhite v. District of Columbia*, 110 F. Supp. 3d 77, 91 (D.D.C. 2015) (Kay, Mag.

J.), and use hourly rates "calculated at 75% of the *Laffey* Matrix."  Def.'s Opp'n at 17–18.

Before deciding which party has the better view, the Court briefly summarizes the law governing

this issue.

### a.  Governing Principles

"Whether an hourly rate is reasonable turns on three sub-elements: (1) 'the attorney's

billing practices,' (2) 'the attorney's skill, experience, and reputation' and (3) 'the prevailing

market rates in the relevant community.'" *Eley*, 793 F.3d at 100 (brackets omitted) (quoting

*Covington*, 57 F.3d at 1107). Because the plaintiff bears the burden of justifying the

reasonableness of her attorneys' requested hourly rate, she must "produce satisfactory

evidence—*in addition* to the attorney's own affidavits—that the requested rates are in line with

those prevailing in the community for similar services by lawyers of reasonably comparable

skill, experience, and reputation." *Id.* at 100, 104 (internal quotation marks omitted) (quoting

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

To that end, if an IDEA plaintiff wishes to base her fee on the LSI *Laffey* Matrix, she

must provide "evidence that her 'requested rates are in line with those prevailing in the

community for *similar services*,' *i.e.*, IDEA litigation." *Id.* at 104 (quoting *Covington*, 57 F.3d at

1109).  That evidence may be found in "[1] surveys [that] update [the matrix]; [2] affidavits

reciting the precise fees that attorneys with similar qualifications have *received* from fee-paying

clients in comparable cases; and [3] evidence of recent fees awarded by the courts or through

---

Ms. Joaquin's preferred rates correspond); Pl.'s Reply Ex. 1 at 1–16, 25–26 (listing work done
before June 1, 2015); *see also infra* note 16 (declining to award current hourly rates, even under
the *Laffey* Matrix, because Ms. Joaquin did not meet her burden to show that current hourly
rates, as opposed to historical hourly rates, would be reasonable in this case).

settlement to attorneys with comparable qualifications handling similar cases." *Id.* at 101

(internal quotation marks omitted) (emphasis added) (quoting *Covington*, 57 F.3d at 1109).  As

the D.C. Circuit has made clear, a version of the *Laffey* Matrix "should not be the default rate for

fees awarded pursuant to [the] IDEA."  *Snead v. District of Columbia*, No. 15-0376, 2015 WL

5921901, at *3 (D.D.C. Oct. 7, 2015); *see Eley*, 793 F.3d at 105 (finding that the district court

abused its discretion by "concluding that 'some version of the *Laffey* matrix is presumptively

reasonable[]'" (quoting *Eley v. District of Columbia* , 999 F. Supp. 2d 137, 159 (D.D.C. 2013))).

### b. *LSI* Laffey *Matrix Rates Not Appropriate*

The Court now applies these principles to Ms. Joaquin's case and the evidence she

submitted in support of her fee motion.  *See* Pl.'s Mot. Ex. 11, ECF No. 24-11 (reproducing a

billing survey of various law firms); *id.* Exs. 4–10, ECF Nos. 24-4–24-10 (including seven

affidavits from IDEA attorneys); Pl.'s Mot. 12 (noting court decisions adopting LSI *Laffey*

Matrix rates).  Although Ms. Joaquin supports her requested hourly rates with evidence from

each of the three relevant categories of evidence (surveys, affidavits, and recent fee awards), *see*

*Eley*, 793 F.3d at 101, Ms. Joaquin's evidence does not demonstrate that the LSI *Laffey* Matrix

provides reasonable hourly rates for her case.  The Court discusses each category of evidence in

turn.

First, Ms. Joaquin has produced "a separate survey" in support of the rates in the LSI

*Laffey* Matrix.  *See* Pl.'s Mot. at 6; Pl.'s Mot. Ex. 11.  But this survey lacks the regional and

subject-matter specificity to show that the LSI *Laffey* Matrix rates "are in line with those

prevailing in the community for *similar services*."  *Eley*, 793 F.3d at 104 (internal quotation

mark omitted) (quoting *Covington*, 57 F.3d at 1109).  Because the survey canvasses billing rates

of partners at law firms nationwide, and not those of attorneys practicing in the Washington,

D.C. region, *see* Pl.'s Mot. Ex. 11, it is not evidence of rates "prevailing in the community,"

*Eley*, 793 F.3d at 104 (quoting *Covington*, 57 F.3d at 1109).  Likewise, the survey does not

specify whether its reported rates correspond to legal services rendered in IDEA cases.  *See* Pl.'s

Mot. Ex. 11.  Indeed, the survey does not even specify whether it queried litigators, as opposed

to transactional attorneys.  *See id.*  The survey therefore does not provide evidence of rates

"prevailing in the community for *similar services*," *Eley*, 793 F.3d at 104 (internal quotation

mark omitted) (quoting *Covington*, 57 F.3d at 1109), and the Court disregards it in considering

whether LSI *Laffey* Matrix rates are reasonable here.

Second, Ms. Joaquin relies on her two attorneys' affidavits, as well as five additional

affidavits from local practitioners specializing in special education cases, to support her view that

LSI *Laffey* Matrix fees are reasonable in this case.  *See* Pl.'s Mot. 6; Pl.'s Mot. Exs. 4–10.  But

these affidavits do not "recit[e] the precise fees that attorneys with similar qualifications have

*received* from fee-paying clients in comparable cases." *Eley*, 793 F.3d at 101 (emphasis added)

(quoting *Covington*, 57 F.3d at 1109).  They therefore do not justify Ms. Joaquin's assertion that

LSI *Laffey* Matrix fees are a reasonable hourly rate for her attorneys in this case.

For instance, Mr. Tyrka, one of Ms. Joaquin's attorneys, states that his firm "has been

retained at [LSI *Laffey* Matrix] rates within the last six months."  Tyrka V.S. ¶ 9, Pl.'s Mot.

Ex. 5, ECF No. 24-5.  Similarly, Mr. Ostrem, Ms. Joaquin's other attorney, states that his law

firm "has always matched its hourly rates" to those in the LSI *Laffey* Matrix, but he does not

address whether he receives payment at those rates.  Ostrem V.S. ¶ 8, Pl.'s Mot. Ex. 4, ECF

No. 24-4.  Both Mr. Tyrka's and Mr. Ostrem's affidavits lack any recitation of the "precise fees"

that they have "received," *Eley*, 793 F.3d at 101 (quoting *Covington*, 57 F.3d at 1109); they

focus instead on the fees they *charged*.  Another affidavit Ms. Joaquin provided suffers from the

same problem.  *See* Moran V.S. ¶¶ 9–12, Pl.'s Mot. Ex. 7, ECF No. 24-7.  And her other affidavits state neither the precise hourly rate the declarant-attorneys use nor whether the attorneys match their rates to those in the LSI *Laffey* Matrix.  *See* Savit V.S. ¶¶ 12–14, Pl.'s Mot. Ex. 6, ECF No. 24-6; Hill V.S. ¶¶ 8–9, Pl.'s Mot. Ex. 8, ECF No. 24-8; Mendoza V.S. ¶¶ 7–11, Pl.'s Mot. Ex. 9, ECF No. 24-9; Hecht V.S. ¶¶ 9–10, Pl.'s Mot. Ex. 10, ECF No. 24-10.  Without evidence of the precise fees Ms. Joaquin's attorneys and other IDEA attorneys have received, the Court cannot determine whether the LSI *Laffey* Matrix rates she requests here "are in line with those prevailing in the community." *Eley*, 793 F.3d at 104 (quoting *Covington*, 57 F.3d at 1109).

To be sure, two of Ms. Joaquin's affidavits do assert that the declarant-attorneys have been paid at LSI *Laffey* Matrix rates.  *See* Tyrka V.S. ¶ 9 (noting "several clients" who pay LSI *Laffey* Matrix rates); Moran V.S. ¶ 12 (stating that those rates "are regularly paid").  But those affidavits do not specify, out of the hundreds of IDEA cases that the two attorneys handle, how many of the lawyers' clients pay the LSI *Laffey* Matrix rates.  *Compare* Tyrka V.S. ¶ 14 (stating that Mr. Tyrka's law firm "has litigated hundreds of IDEA cases in the District"); Moran V.S. ¶ 4 ("I have litigated approximately more than 500 IDEA cases."), *with* Tyrka V.S. ¶ 9 (omitting any number describing how many clients pay Mr. Tyrka's law firm at LSI *Laffey* Matrix rates); Moran V.S. ¶ 12 (same, for Mr. Moran's law firm).  As a result, the Court cannot determine whether the LSI *Laffey* Matrix rates are the lawyers' standard rates, or whether they receive payment at those rates from outlier clients only.  As a whole, Ms. Joaquin's affidavits do not substantiate her argument that "IDEA lawyers earn [LSI *Laffey* Matrix] rates on the market." Pl.'s Mot. 13.[12]

---

[12] The Court notes that the declarant-attorneys in Ms. Joaquin's affidavits state that their practices are struggling and that they look for relief in the form of full *Laffey* Matrix rates and LSI *Laffey* Matrix rates.  *See, e.g.*, Moran V.S. ¶ 13 ("[F]ees equaling 75% of the USAO version

Third, Ms. Joaquin cites several cases decided in this district, as well as settlements

Mr. Tyrka negotiated with the District of Columbia Public Schools ("DCPS"), to support her

requested rates.  *See* Pl.'s Mot. 12, 14–15; Tyrka V.S. ¶¶ 27, 29.  But, with respect to the cases

she cites, most of them are not IDEA cases, and thus are not "evidence of recent fees award . . .

to attorneys . . . handling *similar cases*."  *Eley*, 793 F.3d at 101 (emphasis added) (internal

quotation mark omitted) (quoting *Covington*, 57 F.3d at 1109); *see CREW v. U.S. Dep't of*

*Justice*, 80 F. Supp. 3d 1, 2–3 (D.D.C. 2015) (adopting the LSI *Laffey* Matrix rates, but in a

Freedom of Information Act case); *Salazar v. District of Columbia*, 991 F. Supp. 2d 39, 47,

52–55 (D.D.C. 2014) (same, in a case involving non-IDEA civil rights claims against the District

of Columbia); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 699, 708–10 (3d Cir.

2005) (same, in an environmental law case); *see also Eley*, 793 F.3d at 104 (finding citations to

non-IDEA cases insufficient to show requested rates' reasonableness).  The D.C. Circuit vacated

the one IDEA case Ms. Joaquin cites, *Eley v. District of Columbia*, 999 F. Supp. 2d 137, 154–56

(D.D.C. 2013), *vacated*, 793 F.3d 97 (D.C. Cir. 2015), and that case has not yet reached its

conclusion on remand.  *See* Civil Docket, *Eley v. District of Columbia*, No. 11-0309 (D.D.C.)

(last updated Apr. 25, 2016).[13]  Because the "recent fees awarded by courts" in these cases were

---

of the *Laffey* matrix . . . are too little to keep a firm in business . . . .").  But, to the extent that the
attorneys rely on a public interest in granting them larger fee awards, *see, e.g.*, Tyrka V.S.
¶¶ 54–59 (explaining that, because of irregular fee awards, "IDEA administrative cases from
non-paying clients [receive] the lowest priority," even though "the students of indigent parents
tend to have much greater need of help"), another public interest favors smaller fee awards:
public education itself.  "[I]nflated fee awards are far from harmless; they produce windfalls to
attorneys at the expense of public education."  *Price v. District of Columbia*, 792 F.3d 112, 117
(D.C. Cir. 2015) (Brown, J., concurring).  Inflated fees can, in this manner, harm "the very
children IDEA seeks to protect."  *Id.* at 118.

[13] The district court in *Eley* may very well decline on remand to adopt LSI *Laffey* Matrix
rates.  In that case, the United States has filed a Statement of Interest opposing any fee award
based on the LSI *Laffey* Matrix rates.  *See* Statement of Interest of United States at 2–16, *Eley v.*
*District of Columbia*, No. 11-0309 (D.D.C. Oct. 5, 2015).

not awarded in "similar cases," they do not support Ms. Joaquin's assertion that LSI *Laffey* Matrix rates are reasonable for this case.

Nor do Mr. Tyrka's settlements with DCPS render the LSI *Laffey* Matrix rates reasonable. Although Mr. Tyrka's affidavit does indicate that the settlements compensated his law firm at rates close to LSI *Laffey* Matrix rates, *see* Tyrka V.S. ¶¶ 9–13, the DCPS settlements appear to apply to cases litigated between 2006 and 2008, *see id.* ¶ 10.  Because Mr. Tyrka's law firm completed work for those cases between eight and ten years ago, settlements from that time period are not "evidence of *recent* fees awarded . . . through settlement." *Eley*, 793 F.3d at 101 (emphasis added) (quoting *Covington*, 57 F.3d at 1109).  Even if the LSI *Laffey* Matrix tracks legal services prices in the Washington, D.C. area over time, *see* Kavanaugh Decl. ¶ 7, Pl.'s Mot. Ex. 3, ECF No. 24-3, it is fully possible that changes in prevailing hourly rates for IDEA cases did not keep pace with changes in legal services prices generally.  Thus, fees paid in IDEA cases eight to ten years ago are not evidence of fees prevailing in the community for IDEA cases now, even if both sets of fees derive from the LSI *Laffey* Matrix.  Ms. Joaquin has presented no evidence to the contrary.[14]  Like Ms. Joaquin's citations to non-IDEA cases, her attorney affidavits, and her survey of attorney billing rates, the DCPS settlements do not show that the LSI *Laffey* Matrix rates set reasonable hourly rates for her attorneys' work on her case.

---

[14] Given that a fee cap applied to some of Mr. Tyrka's settlements, their persuasive value here is questionable, even as evidence that LSI *Laffey* Matrix rates were reasonable at the time of those settlements.  *See* Tyrka V.S. ¶¶ 12, 29 & nn.1, 2 (explaining that, on two occasions in which "DCPS settled large groups of Tyrka & Associates['] bills," "federal law prohibited the District of Columbia from paying attorneys' fees for IDEA cases in excess of $4,000 per case").  Given the fee cap, DCPS may have lacked incentive to insist on a lower rate, which means that Mr. Tyrka's settlements may not have reflected prevailing rates in the community for IDEA litigation, even at the time he negotiated those settlements.  *See also Rooths v. District of Columbia,* 802 F. Supp. 2d 56, 62 (D.D.C. 2011) (reasoning, in a case in which the plaintiff cited similar settlements, that "the amount of fees that the District agrees to pay an attorney as part of a bulk settlement is not determined by market forces").

Accordingly, the Court will not award Ms. Joaquin attorneys' fees based on LSI *Laffey* Matrix rates.

### c. Laffey *Matrix Rates Not Appropriate*

Based on the evidence provided, Ms. Joaquin has failed to meet her burden to show that her requested rates are reasonable. *See generally Eley*, 793 F.3d at 104 (indicating that the plaintiff has the burden to show the reasonableness of her requested rates). Having decided that Ms. Joaquin should receive a fee award, however, *see supra* Parts IV.A, IV.B.1.a, the Court must still determine reasonable hourly rates to use in calculating her fee award. The Court may typically do so by reference to the *Laffey* Matrix prepared by the United States Attorney's Office for the District of Columbia. *See Brown*, 80 F. Supp. 3d at 96 & n.2.

But FPCS contends that reasonable hourly rates for this case should actually be seventy-five percent of the relevant *Laffey* Matrix rates, because the issues in this case "were not novel or complex." *See* Def.'s Opp'n at 17–18. Ms. Joaquin disagrees. *See* Pl.'s Reply at 8–10.[15] The parties' disagreement centers on whether this case is "complex" enough (or deals with issues "complex" enough) to merit *Laffey* Matrix rates. *See* Def.'s Opp'n at 17–18; Pl.'s Reply at 8–10. But, at this point in the development of this district's case law on IDEA fees, the Court finds complexity comparisons unhelpful in determining a reasonable hourly rate for IDEA

---

[15] Apart from arguing against FPCS's assertion that this case is not complex, Ms. Joaquin also asserts that FPCS did not "[m]eet [i]ts [b]urden" to rebut Ms. Joaquin's evidence in support of her requested hourly rates. Pl.'s Reply at 10–11. However, because the Court has determined that Ms. Joaquin did not meet *her* burden to demonstrate her requested rates' reasonableness in the first instance, FPCS does not have the burden to rebut any showing of reasonableness. *See Brown*, 80 F. Supp. 3d at 95–96 (explaining that "the burden shifts to the defendant to rebut the plaintiff's showing" only after "the plaintiff provides sufficient and convincing evidence" about "the attorney's billing practices, skill, experience, and reputation, as well as the prevailing market rates in the relevant community"). The Court accordingly addresses Ms. Joaquin's burden-shifting argument no further.

fees, at least to the extent Ms. Joaquin compares her case to non-IDEA cases.  *See, e.g.*, Pl.'s

Reply at 9–10.  The Court's task here is to determine the "rates prevailing in the community in

which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C.

§ 1415(i)(3)(C).  Given the number of IDEA fee opinions that courts in this district have issued,

the Court can arrive at the "rates prevailing in the community," *id.*, without comparing this case

to non-IDEA cases.

     In this district, "the vast number of . . . cases awarding IDEA fees" adopt rates equivalent

to seventy-five percent of *Laffey* Matrix rates.  *Reed v. District of Columbia*, 134 F. Supp. 3d

122, 131 (D.D.C. 2015), *appeal docketed*, No. 15-7119 (D.C. Cir. Oct. 28, 2015).  The Court

therefore finds that the prevailing rates in the community for IDEA litigation are those equivalent

to seventy-five percent of *Laffey* Matrix rates.  *See also McNeil*, 2015 WL 9484460, at *6

(reaching the same conclusion); *Reed*, 134 F. Supp. 3d at 131 (collecting cases).  This status quo

has not changed after the D.C. Circuit issued its opinion in *Eley* on July 10, 2015.  *See Eley*, 793

F.3d at 97 (decided July 10, 2015); *McNeil*, 2015 WL 9484460, at *1,*5 (signed Dec. 29, 2015);

*Snead*, 2015 WL 5921901, at *5 (signed Oct. 7, 2015); *Reed*, 134 F. Supp. 3d at 122, 131 (signed

Sept. 28, 2015).

     As the Court has previously noted, however, "in unusual cases, an IDEA plaintiff might

be able to 'establish the applicability of [the] *Laffey* [matrix] by proffering evidence that *their*

IDEA proceeding was unusually complex.'"  *McNeil*, 2015 WL 9484460, at *6 (alterations in

original) (quoting *Snead*, 2015 WL 5921901, at *4).  But here, Ms. Joaquin has not asserted that

her case was particularly complex when compared to a typical IDEA case.  *See* Pl.'s Reply at

8–10.  Indeed, Ms. Joaquin argues that the Court should *not* focus on individual case complexity

at all in determining a reasonable hourly rate.  *See id.*  And to the extent that Ms. Joaquin asserts

complexity based on (1) the fact that "the parties litigated an entire substantive federal case,"

(2) Ms. Joaquin's two-day administrative hearing, and (3) the eight-hundred-page record, *id.* at 8,

those facts do not render Ms. Joaquin's case any more complex than other IDEA cases in which

this Court has awarded fees using rates equivalent to seventy-five percent of *Laffey* Matrix rates.

*See, e.g.*, *Cook v. District of Columbia*, 115 F. Supp. 3d 98, 100–01, 103–04 (D.D.C. 2015)

(using rates equivalent to seventy-five percent of *Laffey* Matrix rates, for a substantive case

litigated in federal court); *Wood v. District of Columbia*, 72 F. Supp. 3d 13, 24 (D.D.C. 2014)

(same, for a case involving a two-day administrative hearing); *McClam v. District of Columbia*,

808 F. Supp. 2d 184, 190 (D.D.C. 2011) (declining to award "*Laffey* high-end rates" for a case

involving a three-day administrative hearing).  Lacking evidence that Ms. Joaquin's case was

unusually complex, the Court will award Ms. Joaquin attorneys' fees using the prevailing rates in

the community for IDEA litigation: rates equivalent to seventy-five percent of *Laffey* Matrix

rates.[16]

---

[16] In adopting rates equivalent to seventy-five percent of *Laffey* Matrix rates, the Court declines to use only the current *Laffey* Matrix rates.  *Contra* Pl.'s Mot. at 15 ("This Court should award current hourly rates.").  It is true that, outside of the IDEA context, some courts have acknowledged that applying current rates when calculating attorneys' fees may be proper.  *See Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 284 (1989) ("An adjustment for delay in payment is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee under [42 U.S.C.] § 1988."); *Copeland v. Marshall*, 641 F.2d 880, 893 & n.23 (D.C. Cir. 1980) (en banc) (observing, in a Title VII case, that "[a] percentage adjustment to reflect the delay in receipt of payment . . . may be appropriate," and could be based on "present hourly rates").

But here, in arguing for current rates, Ms. Joaquin does not explain why current rates are appropriate in her case specifically, nor does she provide examples of courts applying current hourly rates for fee awards in other recent IDEA cases.  *See* Pl.'s Mot. at 15 (citing only *Jenkins ex rel. Agyei* and *Copeland*, both non-IDEA civil rights cases).  *See generally McAllister v. District of Columbia*, 53 F. Supp. 3d 55, 58 n.2 (D.D.C. 2014) ("In general, compensation for a delay in payment may be more pertinent in [non-IDEA] civil rights matters given the lengthy duration of most civil rights litigation, as compared to the relatively transient nature of IDEA litigation.").  Ms. Joaquin has therefore failed to meet her burden to show that current hourly rates are "in line with those prevailing in the community for similar services." *Eley*, 793 F.3d at

## C.  Total Fees and Costs

The Court calculates Ms. Joaquin's total attorneys' fees by first adopting the *Laffey* Matrix rates.[17]  The Court then reduces the rates by one-quarter to reflect the prevailing rate in the community for IDEA litigation.  *See supra* Part IV.B.2.c.[18]  After calculating these rates, the Court then further reduces the rates by one-half to account for Ms. Joaquin's limited success. *See supra* Part IV.B.1.a.[19]  The Court then multiplies those hourly rates by Ms. Joaquin's attorneys' compensable hours to determine her total fee award.  *See supra* note 10 (listing

---

104 (quoting *Covington*, 57 F.3d at 1109).  The Court will therefore use rates equivalent to seventy-five percent of *historical Laffey* Matrix rates, following the practice adopted in other recent IDEA cases.  *See, e.g.*, *McAllister*, No. 11-2173, 2016 WL 614363, at *3–4 & n.1 (D.D.C. Feb. 16, 2016), *appeal docketed*, No. 16-7035 (D.C. Cir. Mar. 24, 2016); *Reed*, 134 F. Supp. 3d at 131; *Salmeron v. District of Columbia*, 77 F. Supp. 3d 201, 210 (D.D.C. 2015), *vacated on other grounds*, 113 F. Supp. 3d 263 (D.D.C. 2015); *McAllister*, 53 F. Supp. 3d at 57–58.

[17] *See USAO Attorney's Fees Matrix – 2015 – 2016*, Civil Div. of the U.S. Attorney's Office for D.C., https://www.justice.gov/usao-dc/file/796471/download (last visited May 27, 2016); *Laffey Matrix -- 2014-2015*, Civil Div. of the U.S. Attorney's Office for D.C., https://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf (last visited May 27, 2016); *Laffey Matrix -- 2003-2014*, Civil Div. of the U.S. Attorney's Office for D.C., https://www.justice.gov/sites/default/files/usao-dc/legacy/2013/09/09/Laffey_Matrix%202014.pdf (last visited May 27, 2016).

During the time period he worked on Ms. Joaquin's case, Mr. Ostrem had five years of experience (2013–2014), six years of experience (2014–2015), and seven years of experience (2015–2016) practicing law.  *See* Ostrem V.S. ¶ 10 (indicating that Mr. Ostrem graduated from law school in May 2008).  Mr. Tyrka had fifteen years of experience (2013–2014), sixteen years of experience (2014–2015), and seventeen years of experience (2015–2016) practicing law.  *See* Tyrka V.S. ¶ 16 (indicating that Mr. Tyrka graduated from law school in June 1998). Accordingly, *Laffey* Matrix hourly rates for Ms. Joaquin's attorneys are as follows: Mr. Ostrem: $295 (2013–2014), $300 (2014–2015), and $332 (2015–2016); Mr. Tyrka: $450 (2013–2014), $460 (2014–2015), and $504 (2015–2016).

[18] Ms. Joaquin's attorneys' reduced hourly rates are as follows: Mr. Ostrem: $221.25 (2013–2014), $225.00 (2014–2015), and $249.00 (2015–2016); Mr. Tyrka: $337.50 (2013–2014), $345.00 (2014–2015), and $378.00 (2015–2016).

[19] The hourly rates reflecting Ms. Joaquin's limited success, rounded to the nearest cent, are as follows: Mr. Ostrem: $110.63 (2013–2014), $112.50 (2014–2015), and $124.50 (2015–2016); Mr. Tyrka: $168.75 (2013–2014), $172.50 (2014–2015), and $189.00 (2015–2016).

Ms. Joaquin's attorneys' compensable hours).[20]  On the basis of these calculations, the Court will award Ms. Joaquin $26,435.00 in attorneys' fees.  The Court will also award Ms. Joaquin $798.36 in costs, an amount that FPCS did not challenge.  *See* Def.'s Opp'n at 5–19; Pl.'s Reply Ex. 1 at 24–25, 27.[21]

## V.  CONCLUSION

For the foregoing reasons, Ms. Joaquin's Motion for Fees and Costs (ECF No. 24) shall be **GRANTED IN PART** and **DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: May 27, 2016                                          RUDOLPH CONTRERAS
                                                             United States District Judge

---

[20] The Court's calculated fee amounts, listed by year and rounded to the nearest cent, are as follows: Mr. Ostrem: $10,266.46 for 2013–2014 (92.8 hours at $110.63 per hour), $165.93 for 2013–2014 travel (3 hours at $55.31 per hour), $1091.25 for 2014–2015 (9.7 hours at $112.50 per hour), and $3336.60 for 2015–2016 (26.8 hours at $124.50 per hour); Mr. Tyrka: $263.13 for 2013–2014 (1.5 hours at $168.75 per hour), $5131.88 for 2014–2015 (29.75 hours at $172.50 per hour), and $6189.75 for 2015–2016 (32.75 hours at $189.00 per hour).  Mr. Ostrem's hourly rate for travel is half of his hourly rate for legal work.  *See McAllister*, 21 F. Supp. 3d at 106; *supra* note 10.

[21] $382.36 of Ms. Joaquin's award of costs corresponds to costs incurred by Mr. Ostrem. *See* Pl.'s Reply Ex. 1 at 24–25.  $416.00 of Ms. Joaquin's award of costs corresponds to costs incurred by Mr. Tyrka.  *See id.* at 27.